**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

Dated: August 28 2015

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 08-34763 |
| | ) | |
| Dorrence C. Talbut and | ) | Chapter 7 |
| Patricia L. Talbut, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER
### DENYING MOTION TO SELL AND MOTION TO APPROVE AUCTION PROCEDURES

This case came before the court for hearing on December 2, 2014, on the Chapter 7 Trustee's Motion for Authority to Sell Debtor's One-Fourth Interest in Cold Spring Farm, LLC ("Motion to Sell") [Doc. # 46] and Motion to Approve Overbid and Auction Procedures, Break-Up Fee and Buyer Administrative Claim ("Motion to Approve Auction Procedures") [Doc. # 45], and Debtor Dorrence C. Talbut's ("Debtor") objection to the motions [Doc. # 54]. The hearing was continued to January 6, 2015, to allow the parties to supplement the record before the court and Debtor to supplement his objection. A supplemental objection was filed wherein the other members of Cold Spring Farm, LLC, joined in Debtor's objection. [Doc. # 61]. Debtor, his attorney, and the Chapter 7 Trustee attended the January 6 hearing in person. At the hearing, the court granted the parties leave to file additional briefs addressing their respective positions. The parties' additional briefs have been filed [Doc. ## 72 & 73], and the record has been supplemented with the relevant documents as discussed at the prior hearings.

Having considered the arguments of counsel and having reviewed the record before the court, for

the reasons that follow the court will deny the Trustee's motions.

## BACKGROUND

Debtor owns a twenty-five percent interest in Cold Spring Farm, LLC, a Virginia limited liability company ("the LLC"). [*See* Doc. # 61, Ex. 1; Doc. # 62, p. 11]. The parties do not dispute the fact that the LLC owns approximately 299 acres of land located in Otsego County, New York, 227 acres of which are committed to a New York State Forest Tax Law Management Plan ("Forest Management Plan") pursuant to New York Real Property Tax Law § 480-a. [*See* Doc. # 61, Ex. 3, unnumbered p. 2 and Ex. 4]. Under § 480-a, a management plan sets forth requirements and standards relating to stocking, cutting, forest management services, and other uses of the land other than for the production of a merchantable forest crop. N.Y. Real Prop. Tax Law § 480-a(1)(a)(i). Meeting the requirements of § 480-a results in the land being approved for a tax exemption. N.Y. Real Prop Tax Law § 480-a(3)(b). The obligations and the benefits of § 480-a devolve upon and inure "to the owner, his heirs, successors and assigns." N.Y. Real Prop. Tax Law § 480-a(2)(c).

Debtor's membership interest is governed by an operating agreement adopted on September 12, 2000. ("Operating Agreement"). [Doc. # 61, Ex. 2]. Some of the stated purposes of the Operating Agreement include owning, buying and selling real estate, buying, selling and investing in stocks, securities and other investments, facilitating and promoting the retention of family assets within the Members' family, and protecting some of the family's assets from future creditors. [*Id.* at §2.01]. The Operating Agreement provides that "[t]aking any action that would make it impossible to carry on the ordinary business of the Company" requires "approval of the Members" by an "affirmative vote of the Members holding a majority of the Membership interests." [*Id.* at 4.02(a)(iii) and (b)].

Section 8.01, "Assignment Generally," requires a member who wishes to sell his interest in the LLC to "first offer[] in writing to sell such interest to the Company." [Doc. # 61, Ex. 2, § 8.01]. That section further provides that "[t]he Company shall have the right to accept the offer at any time during the 30 days following the date on which the written offer is delivered to the Company." [*Id.*]. If it does not accept the offer within thirty days, the member's interest "may during the following 60 days be disposed of free of the restrictions imposed by [the] Operating Agreement; provided, however, that the purchase price for such interest shall not be less and the terms of purchase for such interest shall not be more favorable than the purchase price and terms of purchase that would have been applicable to the Company had the Company purchased the interest." [*Id.*]. If the member's interest is not disposed of within the sixty-day period, it

remains subject to the terms of the Operating Agreement. [*Id.*].

While § 8.01 of the Operating Agreement is triggered whenever a member is seeking to sell his membership interests, § 8.04 is triggered only on the occurrence of an "Option Event," which is defined to include the filing of a voluntary bankruptcy petition by a member, who is defined as the "Option Member". [*Id.* at § 8.04(a)]. The Option Member is required to deliver written notice of his bankruptcy filing "to the Company." [*Id.* at § 8.04(b)]. "The Company" then has the option to purchase the Option Member's interest at any time during the sixty-day period immediately following the date on which it receives the notice for fair market value, as defined in § 8.04, and upon the terms and conditions set forth in that section. [*Id.* at § 8.04(a) & (b) ]. "Fair market value" of the Option Member's membership interest is defined as "the amount that the Option Member would receive in exchange for his entire interest in the Company if the Company sold all of its assets, subject to their liabilities, at their fair market value as of the date on which the Option Event occurred and distributed the net proceeds from such sale in complete liquidation of the Company." [*Id.* at § 8.04(b)]. Section 8.04(d) sets forth the process of obtaining an appraisal of the fair market value of the Option Member's membership interest and the responsibility of the Option Member and the LLC in paying for such appraisal. The Operating Agreement provides that if the LLC exercises the option to purchase, it "shall make a distribution of property (which may be cash or other assets of the Company) to the Option Member with a value equal in amount to the fair market value of the Option Member's membership interest; provided however, that at the election of the Company such distribution . . . may be made in five equal annual installments," with interest computed at set forth in § 8.04(e). [*Id.* at § 8.04(e)]. The Operating Agreement provides that "[a]ny transfer or other action in violation of [Article VIII] shall be void ab initio and of no force or effect whatsoever." [*Id.* at § 8.07].

Debtor and his wife filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on September 10, 2008. Schedule B discloses the twenty-five percent membership interest in the LLC.[1] Debtor's bankruptcy schedules disclose no security interest in that membership interest. On October 29, 2014, the Trustee filed his Motion to Sell, seeking authority to sell Debtor's membership interest free and clear of all liens and interests pursuant to a stalking horse agreement entered into with Partnership Liquidity Investors, LLC ("Stalking Horse Agreement"), subject to overbids at a public auction. The Trustee also filed a motion to approve the overbid and auction procedures and a break-up fee in the event the

---

[1] Although on Schedule B, Debtors list "Cold Spring Farms LLC 1/4 interest in real estate in up state New York" as owned jointly by them, there is no dispute that the asset is a 1/4 interest in the LLC and that it is owned only by Debtor.

membership interest is sold to someone other than the stalking horse buyer. The Stalking Horse Agreement is not in the record before the court.

## LAW AND ANALYSIS

The Bankruptcy Code provides that, after notice and a hearing, a trustee may sell, other than in the ordinary course of business, property of the estate. 11 U.S.C. § 363(b)(1). As the Trustee may only sell an interest that is "property of the estate," the court addresses what interest of Debtor in the LLC is property of the estate and what interest the Trustee is seeking to sell, as there appears to be some confusion on this issue.

Under § 541(a), property of the estate includes all legal and equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). Under § 541(c), a debtor's interest in property becomes property of the estate notwithstanding any provision in an agreement or applicable nonbankruptcy law "(A) that restricts or conditions transfer of such interest by the debtor;" or (B) that is conditioned on the filing of a case under the Bankruptcy Code and "that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property." 11 U.S.C. § 541(c)(1). Such provisions are referred to as "*ipso facto*" clauses and are not effective in preventing transfer of a debtor's interest to the bankruptcy estate.

The Members correctly assert, and the Trustee does not argue otherwise, that only Debtor's interest in the LLC, and not the real estate owned by the LLC, is property of the estate. *See* Va. Code Ann. § 13.1-1021 (providing that title to any estate or interest acquired in the name of the LLC vests in the LLC). Virginia law defines a membership interest in a limited liability company in economic terms: "a member's share of the profits and the losses of the limited liability company and the right to receive distributions of the limited liability company's assets." Va. Code Ann. § 13.1-1002. However, a member also has non-economic rights in a limited liability company pursuant to Virginia Code § 13.1-1022 and the operating agreement. *In re Virginia Broadband, LLC*, 498 B.R. 90, 94 (Bankr. W.D. Va. 2013). "As such, the bundle of rights associated with a member's membership interest includes both economic and non-economic rights. . . ." *Id.* Although the Virginia Code provides that the only transferable interest of a member in a limited liability company is the member's economic interest, *see* Va. Code Ann. § 13.1-1038, such a restriction is an unenforceable restriction under § 541(c)(1)(A) of the Bankruptcy Code. Both Debtor's economic and non-economic rights in the LLC became property of his bankruptcy estate. *See In re Virginia Broadband, LLC*, 498 B.R. at 95; *In re Garrison-Ashburn, L.C.*, 252 B.R. 700, 708 (Bankr. E.D. Va. 2010).

Similarly, § 8.04 of the Operating Agreement giving the LLC the option to purchase Debtor's interest in the event he files a bankruptcy petition is an unenforceable *ipso facto* clause. This section imposes duties upon Debtor to sell his interest to the LLC for a "fair market value," defined in that section to mean his share of the liquidation value of the LLC on the date he filed his petition, to share in the cost of an appraisal of the assets of the LLC, and to accept payment in kind and in five annual installments at the election of the other members. Before filing, Debtor was not limited to selling his membership interest for the liquidation value of the LLC nor was he under any duty to obtain and pay for an appraisal of the LLC's assets or accept other than a full monetary payment at the time of sale. These provisions thus constitute a modification of Debtor's interest that are unenforceable under §541(c)(1)(B).

The court next addresses the Trustee's ability to sell Debtor's membership interest free and clear of any interest in that property. A trustee may sell property under § 363(b) free and clear of any interest in such property of an entity other than the estate, only if

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).[2] The Trustee has the burden of demonstrating that one of the provisions of § 363(f) is applicable to each lien or interest from which the sale is to be free and clear. *In re Daufuskie Island Prop., LLC*, 431 B.R. 626, 637 (2010).

The Members argue that none of the above factors exist. However, their argument addresses only the first and second factor. The third and fourth factors are not implicated since there are no disclosed liens against Debtor's membership interest and his interest is not in bona fide dispute. And neither the Trustee nor the Members address the fifth factor. The court thus addresses whether the Trustee has met his burden with respect to either the first or second factor.

In arguing that neither the first nor second factors are satisfied, the Members rely on certain provisions of the Operating Agreement. Specifically, they rely on § 4.02(a)(iii) of the Operating Agreement,

---

[2] Section 363(f) is subject to the provisions of § 365, which addresses executory contracts. The Members contend, and the Trustee does not dispute, that the Operating Agreement is not an executory contract.

providing that taking any action that would make it impossible to carry on the company's ordinary business requires approval by the Members, and on § 2.01 that sets forth the "purposes of the Company," which include, among other things, to own real estate, facilitate and promote the retention of family assets within the Members' family, and to protect assets from future creditors. The Members' argument appears to be based upon their understanding that the Trustee was proposing the sale of the LLC's real estate and that such sale requires the approval or consent of the other Members. However, the Trustee is seeking to sell only Debtor's twenty-five percent membership interest in the LLC, not the real estate. Moreover, the stated purposes of the LLC, which, in addition to those specified by the Members, include selling real estate and buying, selling and investing in stocks, securities, and other investments, do not necessarily equate to the LLC's "ordinary business." And the only evidence of any business in which the LLC is engaged is found in the Forest Management Plan. Selling Debtor's membership interest will not make it impossible to engage in forest management as contemplated in that Plan.

While the court does not find the Members' arguments well taken, it is still the Trustee's burden to show the existence of one of the factors set forth in § 363(f). In this regard, issues raised in the parties' briefs and at the hearings on the Trustee's motions require the court to determine what, if any, effect the enforcement under nonbankruptcy law of the Operating Agreement and the Forest Management Plan have on the Trustee's ability to sell Debtor's membership interest free and clear of any interests set forth in those documents.

The Bankruptcy Code provides that the trustee may sell property under § 363(b), "notwithstanding any provision in a contract . . . or applicable law that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title concerning the debtor, or on the appointment of or the taking possession by a trustee in a case under [Title 11] or a custodian, and that effects, or gives an option to effect, a forfeiture, modification, or termination of the debtor's interest in such property." 11 U.S.C. § 363(l). The court initially notes that the Virginia statute restricting transfers by a member to transfers of his economic interest only is not an *ipso facto* provision as it is not conditioned on the commencement of a bankruptcy case concerning the member. Thus, that provision is enforceable with respect to transfers by the Trustee to a third party. At the December 2, 2014, hearing on the Motion to Sell, the Trustee acknowledged that only the economic rights in the LLC are being sold, although the Stalking Horse Agreement was not made part of the record.

Similarly, the provisions of § 8.01 of the Operating Agreement are enforceable in this case. The

requirements of that section, which include a member offering in writing to sell his interest to the LLC before selling to a third party, are not triggered by a member's insolvency, bankruptcy filing, or by the appointment of a trustee or custodian. *See In re Capital Acquisitions & Mgmt. Corp.*, 341 B.R. 632, 637 (Bankr. N.D. Ill. 2006) (finding right of first refusal was not an unenforceable *ipso facto* clause as it was not triggered by the debtor's bankruptcy filing). Thus, § 363(l) does not excuse the Trustee from complying with the requirements of § 8.01 in the process of selling Debtor's membership interest. However, the evidentiary record before the court does not show such compliance.

To the extent that the Trustee seeks to sell Debtor's membership interest free and clear of the other members' interests in enforcing the Operating Agreement, the parties have identified, and the court's review revealed, no provision of the Operating Agreement that is unenforceable, other than § 8.04, which is unenforceable only as a restriction on the transfer of property *to the bankruptcy estate*. Because the Operating Agreement is otherwise enforceable, the Trustee has not shown that applicable nonbankruptcy law permits the sale of Debtor's membership interest free and clear of the LLC's interest in enforcing the Operating Agreement.

As to the Forest Management Plan, under New York law, the obligations and benefits of the Plan devolve upon and inure to the owner of the land that is subject to the plan, its heirs, successors and assigns. As the LLC owns the land subject to plan, the court finds that applicable nonbankruptcy law would not permit the sale of Debtor's membership interest free and clear of the provisions of the Forest Management Plan.

For all of the foregoing reasons, and because the Stalking Horse Agreement is not before the court and the terms of that Agreement are not clear, good cause appearing,

**IT IS ORDERED** that the Trustee's Motion for Authority to Sell Debtor's One-Fourth Interest in Cold Spring Farm, LLC [Doc. # 46] be, and hereby is, **DENIED** without prejudice**;** and

**IT IS FURTHER ORDERED** that the Trustee's Motion to Approve Overbid and Auction Procedures, Break-Up Fee and Buyer Administrative Claim [Doc. # 45] be, and hereby is **DENIED** without prejudice.

###